IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| **James Calandrino** <br> 21320 Victorias Cross Terrace <br> Ashburn, Virginia 20147 <br><br> Plaintiff, <br><br> v. <br><br> **Paragon Systems, Incorporated** <br> 13900 Lincoln Park Drive <br> No. 300 <br> Herndon, Virginia 20171 <br><br> Defendant. <br><br> **Serve Registered Agent:** <br> National Registered Agents, Inc. <br> 4701 Cox Road <br> Suite 285 <br> Glen Allen, Virginia 23060 | Civil Action No. <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

1. Plaintiff, James Calandrino (herein "Calandrino or Mr. Calandrino"), brings this action against the Defendant, Paragon Systems, Incorporated, ("Paragon"), for failure to engage in the interactive process, the denial of reasonable accommodations, discrimination, and reprisal in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101, *et seq.*, ("ADA").

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over Mr. Calandrino's ADA actions pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. §§ 1331.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the unlawful practices committed by the Defendant described herein arose in the Eastern District of Virginia; the Defendant operates facilities located in this District; and the employment documents and records relevant to the prohibited practices are, upon information and belief, maintained and administered at the Defendant's offices located in this District.

## PARTIES

4. Mr. Calandrino is a resident of the Commonwealth of Virginia.  At all times relevant to this Complaint, Mr. Calandrino resided in Ashburn, Virginia.  From July 2018 to February 2020, Mr. Calandrino served as the Defendant's employee.  At the time of Mr. Calandrino's separation from Paragon, his position title was Payroll Administrator at the Defendant's facility in Herndon, Virginia.

5. At all times relevant to this Complaint, Mr. Calandrino was an "employee" of the Defendant within the meaning of the ADA, 42 U.S.C. § 12111(4).

6. Defendant, Paragon, is a Virginia corporation conducting business in Fairfax County in the Commonwealth of Virginia.  Upon information and belief, the Defendant employs over 500 employees.

7. At all times relevant to this Complaint, the Defendant was an "employer" within the meaning of the ADA, 42 U.S.C. § 12111(5)(A).

## ADMINISTRATIVE EXHAUSTION

8. Mr. Calandrino filed a Charge of Discrimination (EEOC No. 570-2021-00432) with the Equal Employment Opportunity Commission's Washington Field Office on December 3, 2020, alleging that the Defendant unlawfully denied his request for a reasonable accommodation and engaged in discrimination due to his disability.  Paragon also refused to engage in the interactive

2

process. Furthermore, Mr. Calandrino alleged that the Defendant retaliated against him due to his request for a reasonable accommodation.

9. Mr. Calandrino received a Notice of Right to Sue from the Commission on January 24, 2022.

## **FACTS**

10. On or about July 12, 2018, Mr. Calandrino began work for Paragon, as a contractor in the position of Payroll Administrator. His job duties included coordinating with local sites and other departments to ensure proper employee compensation and record keeping, maintaining, and updating employee personnel files, and researching and correcting discrepancies relating to employee pay and/or deductions.

11. Mr. Calandrino suffers (and at all relevant times suffered) from the disabilities of depression, anxiety, narcolepsy, cataplexy, and sleep apnea. Mr. Calandrino's disabilities affect his ability to sleep/stay awake, concentrate, and other self-care such as personal grooming.

12. Paragon was aware of Mr. Calandrino's disabilities as he had informed Director of Payroll Ora Pitts, Director of Payroll Jennifer Moss, and Sandra Dorough, Payroll Manager, of them when he began working as a contractor in July/August 2018.

13. In or around October 2018, Paragon informed Mr. Calandrino that he would not be hired as a full-time employee as they were concerned about his disability. However, they kept him employee as contract employee.

14. In or around November 30, 2018, Paragon hired Mr. Calandrino as a full-time employee as they were pleased with his work.

15. Mr. Calandrino initially reported to Ms. Pitts, who was later replaced by Director of Ms. Moss.

16. Mr. Calandrino often discussed his disability with Ms. Moss and informed her that he was willing to answer any questions she may have in regards to his disability and/or limitations.

17. In Mid-March 2019, Mr. Calandrino submitted a letter from his therapist to Brittany Gardner, Human Resources Manager, requesting telework as a reasonable accommodation for his disabilities on an as needed basis. Ms. Gardner recommended that Mr. Calandrino apply for intermittent FMLA as well. Mr. Calandrino followed this recommendation and was granted intermittent FMLA beginning April 16, 2019.

18. That same day, Mr. Calandrino informed Ms. Moss of his reasonable accommodation request.

19. Mr. Calandrino began to take telework on as as-needed basis. Ms. Moss appeared reticent when he took leave and vocally discouraged it.

20. In late April/May 2019, Mr. Calandrino informed Ms. Gardner of Ms. Moss' hostility towards his accommodation need. Specifically, he informed Ms. Moss that Ms. Gardner admonished him in a group chat about the symptoms of his medical condition. Mr. Calandrino discussed how Ms. Moss' treatment of him was exacerbating his symptoms and he requested a transfer to a different department. Mr. Calandrino was not transferred.

21. In late April 2019, Paragon revoked Mr. Calandrino's reasonable accommodation. Further it told Mr. Calandrino to take FMLA days rather than telework.

22. From around July 2018 to November 2019, Paragon allowed Mr. Calandrino, as a reasonable accommodation, to work a flexible schedule with a flexible start time.

23. In around mid-2019, Mr. Calandrino spoke with Human Resources many times regarding his belief that he was being mistreated and singled out because of his disability. He also expressed his belief that Paragon was attempting to force him out. Also, during these meetings

Mr. Calandrino reiterated his request for a reasonable accommodation.

24. In or around late September/early October 2019, Mr. Calandrino asked Ms. Moss, once again, for the reasonable accommodation of telework as needed, as his symptoms were increasing

25. Paragon refused to engage in the interactive process and denied his reasonable accommodation request.

26. On or about November 26, 2019, Mr. Calandrino met with Ms. Gardner and Monika Holland, Benefits and Worker's Compensation Benefits, and they informed him that he had exhausted his FMLA leave.

27. On the same day, Mr. Calandrino challenged the accuracy of the FMLA tracker presented to him.

28. The following day, on or about November 27, 2019, Mr. Calandrino met with Ms. Gardner, he again expressed his concerns regarding how Ms. Moss treated him due to his disability.

29. On or about December 6, 2019, Mr. Calandrino met with Ms. Moss and Ms. Gardner. During the meeting they informed Mr. Calandrino that his flexible work schedule accommodation was revoked. Concerned about the ability to work without an accommodation, Mr. Calandrino reiterated his need for this particular accommodation. Undeterred, Ms. Moss discussed her requirements for Mr. Calandrino's arrival and departure times.

30. On or about December 12, 2019, Mr. Calandrino met with Ms. Moss and Jose Torres, Payroll Manager. The purpose of the meeting was for Mr. Calandrino to sign a document which served as an acknowledgment of the meeting that had occurred on December 6, 2019. Mr. Calandrino agreed to sign it but once again reiterated that he needed the flexible work schedule

and he thought it was unfair that the accommodation had been rescinded.

31. On or about December 16, 2019, Mr. Calandrino met with Erin Hastick, Director of Human Resources.  His intention was to discuss the recission of the reasonable accommodations.  Ms. Hastick, however, did not seem interested in listening to Mr. Calandrino's concerns as she was already aware of the recission.  Moreover, Ms. Hastick informed him that there were deadlines that needed to be met.  As far as Mr. Calandrino knew, he had not missed any deadlines during his tenure at Paragon

32. After the meeting, Mr. Calandrino did his best to keep up with his work and meet Ms. Moss' attendance requirements.  However, towards the end of January 2020, Mr. Calandrino's disability caused him to miss work as he no longer had an accommodation.

33. Paragon repeatedly refused to engage in the interactive process and denied Mr. Calandrino's request for a reasonable accommodation.

34. On or about February 10, 2020, Mr. Calandrino met with Ms. Hastick and Ms. Moss.  During the meeting, Mr. Calandrino indicated that he could not continue working at Paragon with the way things were.  Ms. Hastick asked him whether he was resigning.  Mr. Calandrino said he didn't feel as though he had a choice as his concerns for his health were mounting.

35. On or about February 14, 2020, Paragon's actions caused Mr. Calandrino to be constructively discharged.  He submitted a signed resignation letter to Ms. Hastick, that indicated he was vacating his position, citing ongoing medical concerns.  Ms. Hastick refused to accept the letter as it was written and told Mr. Calandrino to change it and she would accept it.  Accordingly, that same day, he changed it so that she would accept it, citing February 20, 2020, as his last day of employment.

## STATEMENT OF CLAIMS

### COUNT I
### Failure to Accommodate in violation of Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101, *et seq.*

36. Mr. Calandrino re-alleges paragraphs 1-35 and incorporates them fully herein.

37. The Defendant employed Mr. Calandrino for the purposes of the ADA.

38. Mr. Calandrino is disabled under 42 U.S.C. § 12102(1)A), for reasons set forth above.

39. Mr. Calandrino's disability substantially limits him in major life activities including, but not limited to, ability to sleep/stay awake, concentrate, and other self-care such as personal grooming (i.e., brushing teeth, hair, showering).

40. Mr. Calandrino informed his supervisors and other management officials at Paragon of his disability and his supervisors and other management officials observed how his disability limited his ability to perform daily life activities.

41. Mr. Calandrino informed his supervisors and other management officials at Paragon of his request for accommodations on several occasions.

42. In mid-March 2019, Mr. Calandrino requested, and Paragon granted an accommodation allowing him to work from home (telework) on an as-needed basis.

43. Under the accommodation, Mr. Calandrino successfully performed all his work duties.

44. In April 2019, Paragon rescinded Mr. Calandrino's reasonable accommodation.

45. From July 2018 to November 2019, Mr. Calandrino requested and was granted a flexible work schedule as a reasonable accommodation.

46. In December 2019, Paragon rescinded Mr. Calandrino's reasonable accommodation of a flexible work schedule.

47. The Defendant failed to engage in the interactive process as required under the ADA.

48. The Defendant failed to provide Mr. Calandrino notice that his newly rescinded accommodation imposed any undue burden on the operation of business.

49. As a direct and proximate result of the Defendant's discriminatory conduct and behavior, Mr. Calandrino suffered loss and damages.

50. As a consequence of the Defendant's actions, Mr. Calandrino has suffered considerable injury, including loss of present and future earnings, other benefits, and distress as herein alleged.

51. As a consequence of the Defendant's actions, the Defendant is liable to Mr. Calandrino for damages as well as for attorney's fees, the costs of this litigation, and accrued interest.

## COUNT II

### Termination in Violation of Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101, et seq.

52. Ms. Calandrino re-alleges paragraphs 1-51 and incorporates them fully herein.

53. The Defendant employed Mr. Calandrino for the purposes of the ADA.

54. Mr. Calandrino is disabled under 42 U.S.C. § 12102(1)A), for reasons set forth above.

55. Mr. Calandrino's disability substantially limits him in major life activities including, but not limited to the ability to sleep/stay awake, concentrate, and other self-care such as personal grooming (i.e., brushing teeth, hair, showering).

56. Mr. Calandrino informed his supervisors and other management officials at Paragon of his disability and his supervisors and other management officials observed how his disability limited his ability to perform daily life activities.

57. On or about February 14, 2020, Paragon constructively discharged Mr. Calandrino.

58. The Defendant discriminated against Mr. Calandrino when it caused his constructive discharge. 42 U.S.C. § 12112(a).

59. The Defendant discriminated against Mr. Calandrino when it denied him employment because of his need for a reasonable accommodation.  42 U.S.C. § 12112(b)(5)(B).

60. As a direct and proximate result of the Defendant's discriminatory conduct and behavior, Mr. Calandrino suffered loss and damages.

61. As a consequence of the Defendant's actions, Mr. Calandrino suffered considerable injury, including loss of earnings, other benefits and mental distress as herein alleged.

62. As a consequence of the Defendant's actions, the Defendant is liable to Mr. Calandrino for damages as well as for attorneys fees, the costs of this litigation, and accrued interest.

## COUNT III

**Retaliation in Violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12203.**

63. Mr. Calandrino re-alleges paragraphs 1-62 and incorporates them fully herein.

64. The Defendant employed Mr. Calandrino for the purposes of the ADA.

65. Mr. Calandrino is disabled under 42 U.S.C. § 12102(1)A), for reasons set forth above.

66. Mr. Calandrino's disability substantially limits him in major life activities including, but not limited to the ability to sleep/stay awake, concentrate, and other self-care such as personal grooming (i.e., brushing teeth, hair, showering).

67. Mr. Calandrino informed his supervisors and other management officials at Paragon of his disability and his supervisors and other management officials observed how his disability limited his ability to perform daily life activities.

68. In June 2013, Mr. Calandrino engaged in protected activity, in accordance with the ADA, when he requested a reasonable accommodation from the Defendant.

69. On many occasions, as discussed *supra,* Mr. Calandrino engaged in protected activity, in accordance with the ADA, when, he notified his supervisor, Paragon's Director of Human Resources, and others, that he had a right to a reasonable accommodation under the ADA.

70. On February 14, 2020, Paragon constructively discharged Mr. Calandrino.

71. The proximity of Mr. Calandrino's protected activities and his termination by the Defendant, a causal connection can be established to prove retaliation.

72. As a direct and proximate result of the Defendant's discriminatory conduct and behavior, Mr. Calandrino suffered loss and damages.

73. As a consequence of the Defendant's actions, Mr. Calandrino suffered considerable injury, including loss of present and future earnings, other benefits and mental distress as herein alleged.

74. As a consequence of the Defendant's actions, the Defendant is liable to Mr. Calandrino for damages as well as for attorney's fees, the costs of this litigation, and accrued interest.

WHEREFORE, Plaintiff James Calandrino prays for judgment against Defendant Paragon Systems, Incorporated, for equitable relief, back pay, front pay, compensatory damages, consequential damages, punitive and/or liquidated damages, together with prejudgment interest, and for costs and attorneys' fees, and for such other and further relief as may be just and equitable.

## **JURY DEMAND**

Plaintiff Calandrino requests a trial by a jury of their peers as to all claims set forth in this Complaint.

Date: April 20, 2022 Respectfully submitted,



Rosanna Lopez, Esquire
Virginia State Bar No. 70547
Lopez & Wu, PLLC
1818 Library Street, Suite 500
Reston, Virginia 20190
Phone: 703-835-6145
Facsimile: 703-831-0181
Email: rlopez@lopezandwu.com
Attorney for James Calandrino